585 A.2d 1012

**Leonard S. FIORE, Sr., et al., Appellee,**

v.

**OAKWOOD PLAZA SHOPPING CENTER, INC., Joseph H. Aronow, Anthony Galioto, Appellants. (Two Cases)**

Superior Court of Pennsylvania.

Argued Oct. 11, 1990.

Filed Jan. 15, 1991.

448

Roy A. Powell, Pittsburgh, for appellee.

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

POPOVICH, Judge:

This case involves an appeal from the October 2 and 18, 1989, orders of the Court of Common Pleas of Centre

County dismissing the defendants/appellants' rules to show cause and holding them in contempt of court. We affirm.

To appreciate the result we reach in the case, a detailed account of the events leading to the present appeal is necessary. Toward that end, the record indicates that Saul Waxman, a real estate broker in central Pennsylvania, was approached by a Doctor David Hadden in regard to property he wished to sell in Centre County. Mr. Waxman, at all times thereafter, represented the partnership of FL & S Associates.[1]

Waxman made contact with Joseph Aronow and Anthony Galioto, both New York residents, who showed interest in purchasing the land in question and constructing a shopping center on the site.

The parties had agreed, at least at first, that the purchase price was to be paid in cash. However, Mr. Aronow altered his position and wanted a subordinated purchase money mortgage to be issued. To this, FL & S agreed without objection. To accommodate Mr. Waxman, the FL & S group offered to secure the payment of the balance of his commission (he had been paid $27,000.00 and could have been owed, depending on the square footage of the center when completed, up to $70,000.00) by assigning him a 6% interest in the mortgage FL & S held on the property sold to the defendants as their security for the remaining monies to be paid.

To validate the sale of the the property between the parties, an indenture with Bond and Warrant, along with an accompanying addendum, were executed by the defendants and FL & S. Both the Bond and Warrant and Mortgage documents contained confession of judgment clauses authorizing acceleration of payment of the $1.1 million purchase price plus attorney's fees upon default of the prescribed monthly payments of principal and interest.

---

1. FL & S Associates consisted of Leonard S. Fiore, Sr., Leonard S. Fiore, Jr., Richard R. Fiore, Thomas C. Large and Harry K. Sickler, t/a FL & S Associates. This same cadre make up the party-plaintiffs/appellees.

Upon failure of the defendants to make payments as required by the various documents, the plaintiffs filed a complaint in confession of judgment demanding a total of $1,216,145.00 (in principal, attorney's commission and 9% interest as of August 26, 1989) from the defendants for "default[ing] ... under the terms of ... [a] Bond and Warrant ... to make agreed upon payments" calculated as $9.00 per square feet times total interior square footage on permit for building less $700,000.00 but not less than $750,-000.00. The document was dated December 23, 1986, and executed by Anthony Galioto, as President of Oakwood Plaza Shopping Center, Inc., and individually as did Joseph M. Aronow. The $700,000.00 figure, however, did not appear anywhere in the "form" Bond and Warrant document. Rather, attached thereto was an "addendum" in which the defendants agreed to:

> ... pay to Obligee [plaintiffs] one-half of the entire principal amount of the obligation secured hereby[*] The entire principal then be due and payable on or before four months after the Commencement date; and *such principal amount is calculated as nine ($9.00) Dollars/per square foot times total interior square footage on permit for building less seven hundred thousand dollars but not less than $750,000.00.*[2]

By notice of even date, the prothonotary of Centre County entered judgments in favor of the plaintiffs and against each of the defendants, separately. Pursuant to Pa.R. Civ.P. 4006, 4009 and 4019, the plaintiffs requested of the defendants that they produce various documents and respond to interrogatories for the discovery of assets to aid in the execution of the judgments.

On January 6, 1989, the plaintiffs filed Motions to Compel and For Sanctions for failure of the defendants to answer interrogatories and/or produce documents. On May 10, 1989, a petition to open or strike judgment was filed by Joseph M. Aronow and Anthony Galioto. It was alleged

2. The underscored language was added to the "addendum" and appears in hand-written form in the margin of the document.

therein that, on December 16, 1986, the plaintiffs had agreed to sell and the defendants to buy a parcel of land. In furtherance of the sale, the succeeding instruments were signed: (a) agreement of sale with rider; (b) purchase money mortgage with addendum; and (c) warrant with addendum.

It was the contention of the defendants that the plaintiffs had obligated themselves to "obtain all necessary approvals from authorities having jurisdiction over the site for use ... as a shopping center ... and to obtain building permits." Paragraph 10. Further, the defendants averred that the plaintiffs, by way of agreement, were to provide: (a) all municipal water and sanitary sewers; and (b) a road around the perimeter of the site for ingress and egress with water, storm and sanitary sewer pipe lines. Paragraphs 12 and 15.

The plaintiffs were held to have failed to comply with any of the "condition[s] precedent to the payments to become due under the Note." Paragraph 24. Because the addendum (which was recorded with the mortgage) took precedence over the Note, and the former was not attached to the Note when confession of judgment was made, it was the defendants' position that the Note was "not collectible" and unenforceable for the "[P]laintiffs' fail[ure]" to give material consideration as they promised as an inducement to obtain the Note. Paragraphs 35, 37 and 39. The defendants also argued that, because the principal balance due to the plaintiffs under the addendum to the Note was "based on a formula using the total interior square footage as shown by the building permit," the complaint's failure to set forth the square footage permitted by the building permit, or that it was ever issued, justified striking the confession of judgment. Paragraphs 42 and 43.

At this point, it requires that we recite the substance of the Agreement of Sale signed by the interested parties hereto and dated July 14, 1986, with respect to the 14.8 acres of land situate in Patton Township, Centre County. In Paragraph 1, the parties provided that, as a condition to the contract, the plaintiffs/sellers:

... shall obtain approval by all necessary authorities having jurisdiction over the site for use of the site as a Shopping Center or Strip of no less than 161,200 square feet and no more than 200,000 square feet ground coverage for interior commercial space useable for retail shopping.

That said approval shall include provision for municipal water, municipal sanitary sewers to within 50 feet of the site, and acceptable storm sewers or collection pools, all with the right to install, hook-up and utilize at no additional cost or expense for construction other than normal hook-up fees, connecting pipes of up to 50 feet and on-site storm pipes and pool constriction.

As for the purchase price, it was to be computed based on the square footage of the shopping center to be used for commercial space times $9.00. Paragraph 5. Affixed to the Agreement of Sale was a Rider that took precedence over the Agreement of Sale and required that the plaintiffs/sellers: "present all prepared engineering and architectural studies to local authorities for approval of the exact site plan required by [defendants/]Purchaser." Paragraph 9.

A motion to strike the petition of Joseph M. Aronow and a response thereto were filed. In the latter instrument, the plaintiffs averred that judgment was entered properly based on the defendants' default. The plaintiffs denied that the Agreement of Sale and Rider "were pursuant to any offer" by the plaintiffs. Paragraph 8. And, the allegations in Paragraphs 10, 12, 21 and 27 of the defendants' petition were claimed to be "misstatements of said agreement." Also, the plaintiffs denied not obtaining all necessary approvals and refuted the contention that they had any obligation to obtain building permits. Paragraphs 11, 15, 16, 22, 25, 30, 39, 40 and 43. Lastly, the plaintiffs admitted that the terms of the addendum were incorporated as part of the Bond and Warrant, see Paragraphs 29 and 32, but it was denied that the "Bond and Warrant" was incomplete, altered or failed to include the addendum. Paragraphs 31,

34 and 35. As for the lack of consideration on the obligation to provide a road for ingress and egress, this was denied as well by the plaintiffs. Paragraphs 15 and 39.

In support of the motion in opposition to the petition to open or strike judgment, the affidavits of David Sweetland and Harry K. Sickler, Jr. were submitted by the plaintiffs.

Sweetland's affidavit indicated that, between 1981 and 1986, he was township engineer for Patton Township, Centre County, and was familiar with all regulations required in connection with land development in that area. As is applicable here, he was involved with the "planning for and obtaining approvals in connection with the Oakwood Plaza Shopping Center Development." Paragraph 4. Sweetland also averred that the defendants had taken court action in the Supreme Court of New York, County of New York. There, Sweetland submitted responses, under oath, in support of his Motion For Summary Judgment In Lieu Of Complaint And In Opposition To Defendants' Cross Motions.

Sweetland's affidavit, prepared for presentment before and submitted to the Supreme Court of New York to buttress his motion for summary judgment, indicated that he was hired to perform engineering and consulting services for Joseph M. Aronow and Anthony Galioto with regard to the construction of a shopping center on the 14.8–acre site in Patton Township, Centre County. The architectural and buildings plans were to be prepared by CDA International, Inc. for Aronow and Galioto. Paragraph 9. It was never Sweetland's understanding that FL & S Associates was responsible for or in any way involved with consulting or architectural services relating to the planning and design of the Oakwood Plaza Shopping Center Project. Paragraph 11.

Sweetland, pursuant to his affidavit, acknowledged advising Aronow, for whom he had prepared a preliminary General Site Plan, "both orally and in writing that submission of the [Final] Site Plan to Patton Township for approval was the next step required in order to progress the

development of the project. Any subsequent approvals or design work could not proceed without the submission of the [Final] Site Plan for approval." Paragraph 22. This never came to pass, and Sweetland was never paid for his services to Aronow and Galioto.

According to Sweetland, increasing the interior retail space from 161,200 square feet to 193,382 square feet was calculated by him and provided to the defendants. And, as far as Sweetland was concerned, "no question that further work toward obtaining additional approvals and building permits required decisions and authorization to proceed by Oakwood, Aronow and/or Galioto[, and not anyone involved with FL & S Associates]." Paragraph 29, Exhibit 2.

The second affidavit of record is that of Harry K. Sickler, Jr., a partner of FL & S Associates. He also prepared a similar affidavit in support of Motion For Summary Judgment In Lieu Of Complaint And In Opposition To Defendants' Cross Motion filed in the Supreme Court of the State of New York.[3] He adopted the affidavit as a response to the defendants' Petition to Open or Strike Judgment. It was alleged therein that the defendants,[4] by agreement dated July 14, 1986, had contracted to buy a 14.8–acre site of land in Patton Township from the plaintiffs. Subsequently, the two parties agreed upon a rider to the contract which changed the purchase price. Also, on December 23, 1986, the defendants executed an indenture ("Purchase Money Mortgage") in the amount of $1.1 million for the 14.8 acreage of land. Additionally, the defendants executed a Bond and Warrant obligating the three to pay FL & S Associates $1.1 million with interest at 9% per annum.

Once the Deed and Mortgage were recorded, the defendants defaulted on their obligations and failed to pay as

3. The motion before the New York court is based upon facts and claims for relief that are identical to those contained in the two Pennsylvania actions that have proceeded to final judgment. Paragraph 43.

4. State College Development Company was initially involved in the purchase of the realty. However, it assigned to Oakwood the agreement of sale. Paragraph 19, Sickler's Affidavit.

required under the Bond and Warrant and the Purchase Money Mortgage. As a result, on October 31, 1988, FL & S Associates instituted a Complaint in Mortgage Foreclosure in Centre County (No. 88–2392). The defendants failed to respond. Thereafter, in accordance with Pa.R.Civ.P. 237.1, FL & S Associates provided notice of its intention to take a default judgment in the event the defendants did not respond to the complaint. Notice was delivered on November 15, 1988. By December 5, 1988, the defendants had filed no response. Accordingly, pursuant to Pa.R.Civ.P. 1037(b), a judgment in the amount of $1,287,713.88 was entered in favor of FL & S Associates and against the defendants by the Court of Common Pleas of Centre County.

Notice of entry of the judgement was provided to the defendants on December 5, 1988, and a writ of execution was issued on the judgment on the same day by the court. No action was taken by the defendants. By separate complaint filed September 9, 1988, FL & S Associates commenced an action on the Bond and Warrant against the defendants. The complaint on the Bond and Warrant was based upon the identical facts giving rise to the complaint in mortgage foreclosure.

Notification of the entry of the judgment in favor of the plaintiffs in the amount of $1,216,145.00 plus interest was sent to each of the defendants on September 9, 1988. On November 9, 1988, under Pa.R.Civ.P. 3117, 4006 and 4009, FL & S Associates served a request for discovery in aid of execution on each of the defendants. The defendants failed to respond, and, as a result, FL & S filed and served on the defendants a motion to compel and for sanctions for the defendants' failure to respond to discovery. The court granted the motion after argument for which the defendants did not respond or appear. In fact, no action was taken by the defendants since the entry of the judgment, and the situation remains status quo.

It was Sickler's contention, via his affidavit, that the defendants' claims of FL & S failing to meet certain of its obligations were based on "unsupported affidavits" sub-

mitted in the motion for summary judgment in lieu of complaint before the court in New York, and the same "are provably false." Paragraph 45, Sickler's Affidavit. For example, to Galiolo's affidavit that Paragraph 1 of the Agreement of Sale made the plaintiffs responsible for obtaining on-site improvements, it was FL & S Associates' position that the "necessary approvals ... were obtained. (Documentation of the approvals are included in the Affidavit of David Sweetland.)." Likewise, the approved number of square feet was increased by the zoning board to 193,382 square feet of retail space on the site as well as FL & S providing an irrevocable letter of credit in the amount of $83,000.00 to guarantee the performance of the public improvements which included a "roadway".

On the question of engineering and architectural studies, the plaintiffs asserted that what plans existed were presented to the local authorities for approval. Since no "final site plan" had been completed by the defendants, FL & S Associates could not have been requested "to present what did not exist." Finally, FL & S Associates, through Sickler's affidavit, stated that the Agreement of Sale and Rider (contrary to the defendants' interpretation) required that "all engineering and architectural work was defendants' responsibility and that defendants could request FL & S Associates to submit defendants' designs for approval. No such request was ever made[.]" To the same effect, Sickler's affidavit alleged that Aronow's affidavit was "filled with misstatements and fabrications" regarding the obtaining of building permits, providing water and sanitary sewers, storm sewers and collection pools, and installing a roadway around the perimeter of the site by the defendants.

As far as FL & S Associates was concerned, it had "clearly performed its obligations by providing for the extension of utilities and the completion of the roadway." Similarly, FL & S was of the mind that the obtaining of building permits was not a *sine qua non* to any payments under the Bond and Warrant and Mortgage.

On June 15, 1989, a hearing was conducted to resolve the various complaints and motions filed by the respective parties regarding the confession of judgment and the attempt by the defendants to open or strike its entry. Thereafter, the court issued an opinion and order dated July 14, 1989, denying the motion to open or strike judgment, one of the grounds being that the defendants' delay of almost 9 months in contesting the confession of judgment was "unreasonable ... [and the defendants] fail[ed] to offer any explanation or excuse for such a delay." The July 14th order was reduced to judgment and an appeal to this Court followed.

By September 15, 1989, the plaintiffs had filed motions seeking to hold the defendants in contempt of court and impose sanctions for failure to answer interrogatories in aid of execution of the confession of judgment. Further, the plaintiffs argued that the defendants' appeal was "untimely" and a motion to quash would be filed by FL & S Associates. In response, the defendants alleged that their appeal was timely, that they were not showing contempt for the court and wished to have an adjudication on the merits of the case to establish that the plaintiffs were not entitled to recovery.

In particular, the defendants averred that the action should be vacated for the lack of subject matter jurisdiction for the plaintiffs' failure to join a necessary party-plaintiff, i.e., Saul Waxman, the individual who acted as a real estate broker in facilitating the transaction leading to the Agreement of Sale. Paragraph 6. And, because the addendum provided that no action could be instituted under the mortgage without written consent of Waxman or the purchase of his interest by the plaintiffs, the failure of either event to occur denied the court subject matter jurisdiction to entertain the suit. Paragraphs 13, 14 and 20.

On October 11, 1989,[5] the plaintiffs presented an answer to the defendants' petition seeking to vacate the judgment.

5.  In the interim, i.e., on October 2, 1989, the court held the defendants in contempt and directed each to pay $3,000.00 for failing to comply

They argued that the cause of action against the defendants was initiated in accordance with the terms of the Bond and Warrant, that the payment of 6% interest to Waxman was secured by the mortgage and was separate and distinct from the Bond and Warrant. Further, the plaintiffs asserted that the mortgage was not the subject of the proceeding, Waxman had no interest in the Bond and Warrant, and, although Waxman's consent was not obtained prior to commencing the suit under the Bond and Warrant:

> ... he ha[d] specifically consented to the actions commenced by FL & S Associates, including the instant proceeding, as well as the proceeding to foreclose on the mortgage filed at No. 88–2392. Paragraph 11.

Finally, the plaintiffs urged that the defendants had misrepresented repeatedly, under oath, the facts relating to the proceedings before the court and continued to do so both in the petition and in the affidavits attached thereto. Paragraph 17.

On October 10, 1989, a hearing was conducted on the motions for a stay of discovery and to vacate judgment. At that time, counsel for the defendants told the court that he had discontinued, that morning, the appeal to Superior Court and presented the court with a copy of the praecipe for discontinuance to establish record evidence that there was no case pending before the Superior Court so as to deprive it of the "ability to act" on defendants' petition.[6]

The fundamental argument to vacate judgment was stated by the defendants to be "a relatively simple and straight forward argument that the judgment ... [was] void ... for

with its January 26, 1989, order. On October 10, 1989, the defendants filed a motion for reconsideration of the October 2nd order on the ground that, inter alia, they were guilty of no more than indirect criminal contempt warranting, under 42 Pa.C.S. § 4136(b), a maximum fine of $100.00. By order dated November 13, 1989, the fine was reduced to $100.00 plus reasonable attorney's fees to be determined at a later date.

6. Our review of the record evidences the inclusion of no exhibit of the withdrawal of the appeal to Superior Court being attached to the stenographer's notes, despite the fact that there is an indexing system referring to the defendants/petitioners' exhibit # 1.

failure of the plaintiff[s] to join as a party in the proceedings an indispensable party. That indispensable [party was] Saul Waxman." The remedy for this procedural misstep, so stated the defendants, was to dismiss the action. And, the fact that Waxman may have consented to the plaintiffs' suit after its institution was of no moment.

Counsel for the plaintiffs was permitted to present the position of his clients. In doing so, he observed that the initial argument that the court lacked jurisdiction, given the withdrawal of the appeal to Superior Court by the defendants, was a moot point. The simple issue, as viewed by counsel for the plaintiffs, was one in which the defendants were confusing the "Bond and Warrant" with the "Mortgage"—two separate documents which the defendants believed should be construed together in resolving the case.

Counsel for the plaintiffs asserted that Waxman was not a party to the "Bond and Warrant" and had no interest in such a document. Thus, the case should focus on the resolution of the "Bond and Warrant" matter since the only instrument in which Waxman had an interest was the "Mortgage", an action in which judgment had been entered by default almost a year prior to the present suit in which no appeal or petition to open had been filed. The mortgage foreclosure action was continuing to proceed, so stated counsel for the plaintiffs.

Additional argument was heard from both counsel. Waxman testified that he agreed to allow the plaintiffs to proceed with their lawsuit against the defendants after its commencement. It was Waxman's understanding that he was to look to the plaintiffs to recoup his broker's commission on the real estate transaction. He had no claim against the defendants.

On October 18, 1989, the court issued an opinion and order dismissing the defendants' Rule To Show Cause. Once this order, along with the contempt order and fine of October 2, 1989, was reduced to judgment, an appeal to this Court ensued challenging both adjudications.

The first issue posed for our consideration concerns the finding by the court below, and endorsed by the plaintiffs, that the defendants' filing a notice of appeal on September 5, 1989, to Superior Court from the order of July 14, 1989, denying their petition to open or strike judgment divested the court of jurisdiction to vacate the judgment.

The law is settled in this Commonwealth that once a party takes an appeal to an appellate court, the trial court is divested of jurisdiction over the subject matter and "may no longer proceed further in the matter." Pa.R.App.P. 1701(a); *Corace v. Balint,* 418 Pa. 262, 210 A.2d 882 (1965); *Commonwealth v. Burkett,* 352 Pa.Super. 350, 507 A.2d 1266 (1986), allocatur denied 9/10/87. Instantly, an examination of the record discounts any divestiture of jurisdiction in the court below.

For instance, we had attorneys for both parties acknowledging at the October 10, 1989, hearing that there had been a discontinuance of the defendants' previous appeal of the July 14, 1989, order denying the defendants' petition to open or strike judgment. This appeal was docketed at No. 545 HBG 89 by the prothonotary for the Superior Court in Harrisburg. A copy of the praecipe discontinuing the No. 545 HBG 89 appeal was presented, at least ostensibly, to the court below during the October 10, 1989, hearing [7] and a *copy* of the same was included in the appellants' "supplemental Record On Appeal" at 1b–3b.

■ We would note at this juncture that the presentment of a *copy* of the praecipe discontinuing the previous appeal to afford the court below authority to entertain the issues to be decided is *not* consistent with this Court's disallowance of the use of appellate briefs as a substitute for evidence in the record generated and compiled at the trial level. See, e.g., *McCormick v. Allegheny General Hospital,* 364 Pa.Super. 210, 527 A.2d 1028 (1987).

■ It is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those

7. See note 6, supra.

documents necessary to allow a complete and judicious assessment of the issues raised on appeal. It is not for an appellate court to scour the dockets of the various prothonotaries to confirm or deny allegations of any party to an appeal. See, e.g., *Commonwealth v. Santana*, 321 Pa.Super. 299, 468 A.2d 488 (1983).

■ Nonetheless, even though we have the authority to remand this case for a supplementation of the record on this issue of "discontinuance" of a prior appeal at No. 545 HBG 89, see Pa.R.App.P. 1926, we have taken the liberty, in the interest of judicial economy, to determine that the original appeal of the July 14, 1989, order was withdrawn and discontinued by the appellants on October 10, 1989, the very date inquiry was made into why the judgment earlier entered in the case (on July 14, 1989) should not be vacated and why discovery in aid of execution should not be stayed. Accordingly, we find that the court was not deprived of jurisdiction under this theory of the case.

The second issue proffered by the appellants attributes the court below with error in holding that Waxman was not an indispensable party, and, therefore, a vacation of the confession of judgment was warranted.

It does not go unnoticed that the appellants do not assail the confession of judgment under the traditional tripartite test to determine whether a judgment should be opened.[8] See *Cross v. 50th Ward Comm. Ambulance Co.*, 365 Pa.Super. 74, 528 A.2d 1369, 1371 (1987). Notwithstanding such

---

**8.** The appellants did so, however, by a petition to open or strike judgment filed May 10, 1989, and alleged therein that, inter alia, the appellees' failure to secure purported "permits" for and construct "roads" on the proposed shopping center site rendered the underlying "Bond and Warrant" with addendum unenforceable for lack of consideration. No mention was made at that time to the indispensability of Waxman to the suit so as to deprive the court below of jurisdiction to entertain the confession of judgment. Notwithstanding that fact, the petition was denied for the appellants' failure to assert "a meritorious defense." Lower Court Opinion, 7/14/89 at 3. No timely appeal was perfected from the July 14, 1989, order of court. In fact, the notice of appeal to Superior Court was filed *September 5, 1989,* well beyond the 30–day time-limit to attack a final order. See Pa.R.App.P. 903(a). This appeal was withdrawn, ultimately, on October 10, 1989. See note 7, supra and accompanying text.

a fact, the appellants assert the indispensability of Waxman as a party to the suit denied the court below of jurisdiction to hear and enforce any matter attendant to the confession of judgment issue.

■ In this Commonwealth, the issue of failure to join an indispensable party cannot be waived; if such a party is not joined, a court is without jurisdiction to decide the matter. See *Nelson v. Dibble*, 353 Pa.Super. 537, 510 A.2d 792 (1986). In deciding whether a party is to be labelled indispensable, the following factors are utilized in the equation:

> 1) whether the party has a right or interest related to the claim; 2) the nature of the right or interest; 3) whether the right or interest is essential to the merits; and 4) whether justice can prevail without violating due process rights of the absent party.

*Waksmunski v. Delginis*, 391 Pa.Super. 37, 44, 570 A.2d 88, 92 (1990) (Citations omitted); see also *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1855); 3A Moore, Federal Practice § 19.07.

■ At bar, our examination of the record reveals the absence of the factors necessary to establish the indispensability of Waxman as a party-plaintiff.

As is accurately observed by the appellees in their brief to us at pages 13 and 14:

> First, the instant action relates to the Bond and Warrant, or Note, executed by Oakwood as well as Aronow and Galioto individually. Judgment was entered on that Note in September, 1988. Contrary to Appellants' assertion, Mr. Waxman has no pecuniary interest in the Note, is not a party to that Note, nor was he assigned any interest in the Note by FL & S Associates. FL & S Associates hold[s] the only interest in that Note. [See Bond and Warrant RA 231a.] A separate action on the mortgage was filed at No. 88–2392 on October 31, 1988. That action filed by FL & S Associates relates to the mortgage on the Oakwood property and it is that mortgage in which

FL & S Associates has assigned a 6 percent (6%) interest to Mr. Waxman in order to provide security for the payment of commissions that may be owed to Mr. Waxman by FL & S Associates in the event that FL & S Associates is paid the balance owed on the Note. As is apparent from the Addendum to the Mortgage (RA 226a), Mr. Waxman is merely an assignee of a portion of FL & S Associates' interest in the mortgage, and that assignment is to secure the payment of certain additional commissions when and if they become due. [See Mortgage with attached Addenda RA 223a.]

Second, Appellants defaulted in the mortgage foreclosure proceeding and have never moved to open or vacate that Judgment and no appeal from that Judgment entered on December 7, 1988 has ever been filed. In short, Appellants[ ] have filed this Petition in the *wrong proceeding.* [Emphasis in original]

Additionally, the court below has written that:

Mr. Waxman is not an indispensable party since complete relief can be accorded among those already party to the action without his presence, and his absence will not impair or impede his ability to protect his interest, nor will it leave Defendants at risk of incurring double, multiple, or inconsistent obligations. *Gardner v. County of Allegheny,* 382 Pa. 88, 114 A.2d 491, 495 (1955). Mr. Waxman's interest in the mortgage was assigned by FL & S Associates solely to secure the payment of funds arising from the separate contractual relationship between Mr. Waxman and FL & S Associates.

Because Mr. Waxman's interest is in the mortgage and arises out of FL & S Associates['] interest, and since Mr. Waxman's right to the payment of any additional funds relates to FL & S Associates' contractual obligation to him for additional broker's commissions, Mr. Waxman has no direct claim against the Defendants under the bond and warrant or otherwise. Not only is his presence not essential for granting relief in this matter, but it is wholly irrelevant and inappropriate in this action.

Furthermore, Mr. Waxman is not an indispensable party to this action since his interest is in the mortgage and not the bond and warrant; and since that interest is not joint for purposes of Pa.R.Civ.P. 2227(a) ("persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants"). The addendum to the mortgage clearly states that FL & S Associates has *assigned* to Saul Waxman a 6% interest in the mortgage. It does not create a joint interest in the mortgage between the parties nor does it render Mr. Waxman an indispensable party to the present proceedings.

Lower Court Opinion, 10/18/89 at 8–9 (Emphasis in original). We agree.

Because we hold that the court correctly found Waxman not to be an indispensable party to the lawsuit, this, of necessity, dispenses with the need to respond to the allegations of the appellants captioned Points III and IV in their appellate brief, both of which relate to Waxman and his purported status as an indispensable party and his failure to consent to the commencement of the present litigation.

■■■. The last contention relates to the supposed commission of error on the part of the court below in denying a stay of execution and holding the appellants in contempt for failing to comply with the execution procedures. See Appellants' Brief at 38.

Judge Grine, in his opinion, has artfully stated the case against the appellants' argument:

Defendants contend that because they have filed a Notice of Appeal, discovery in aid of execution should be stayed. However, Defendants have failed to comply with the Pa. Rules of Appellate Procedure in order to properly perfect the appeal or a supersedeas to stay discovery in aid of execution in this matter.

It is well-established that a prerequisite to the issuance of a supersedeas is the existence of a valid appeal. *See generally, Wilkinson v. United Parcel Service,* 158 Pa.

Super. 34, 43 A.2d 414, 415 (1945). Only Defendants Aronow and Galioto have filed a Notice of Appeal. However, even Aronow and Galioto's Notice of Appeal of this Court's Order of July 14, 1989, was not filed until September 5, 1989, 53 days after the entry of the Order. Accordingly, the Notice of Appeal is untimely and cannot support the requested stay.

\* \* \* \* \* \*

Although Rule 1701 of the Pennsylvania Rules of Appellate Procedure states that the trial court no longer has jurisdiction in a matter after appeal has been taken, the exceptions to that rule provide that the trial court may continue to "enforce any order entered in the matter, unless the effect of the order has been *superseded* as prescribed in this chapter." This Court, therefore, retains jurisdiction to enforce its prior order of January 26, 1989, directing defendants to respond to discovery in aid of execution, absent an appropriate supersedeas issued by the Superior Court. This Court is empowered to enforce its orders, even after Notice of Appeal, by means of contempt. *See, Rosenberg v. Holy Redeemer Hosp.*, 351 Pa.Super. 399, 506 A.2d 408, 414 (1986).

\* \* \* \* \* \*

The Rules of Appellate Procedure require that Defendants properly perfect an application for supersedeas and file a bond with the appellate court in order to stay judgment or any postjudgment proceedings ancillary to judgment. *See, e.g.* Pennsylvania Rules of Appellate Procedure 1731–1738. The mere filing of an appeal does not automatically function as a supersedeas and stay the trial court's powers. *Shinn v. Stemler* [159 Pa.Super. 129], 47 A.2d [294] at 295 [ (1946) ] (Defendant appealed Order denying Petition to O[pe]n Judgment. Court held Judgment not stayed by appeal). Defendants have neither requested a supersedeas nor filed any bond with the Superior Court.

\* \* \* \* \* \*

... Defendants have virtually no chan[c]e of success on the merits. As this Court determined, Defendants failed to demonstrate that they could fulfill the "meritorious defense" factors required to justify opening or striking a judgment. [See this Court's Order of July 14, 1989]. Accordingly, under any analysis, but especially under the no abuse of discretion standard applicable to Defendants' appeal, there is little likelihood that Defendants will prevail on appeal.

Inasmuch as the appeal filed by Aronow and Galioto is not only untimely, but is also without merit, a stay in this case would further prejudice Plaintiffs' attempts to execute on the judgment. The resulting detriment to Plaintiffs would be without reason and serve no legitimate purpose for Defendants' benefit, other than to continue to delay the enforcement of Plaintiffs' rights. Therefore, even if Defendants had properly requested a supersedeas and filed the appropriate security with the Court, they would not be entitled to a stay of discovery, or any other ancillary post-judgment proceeding of this Court.

Lower Court Opinion, 10/18/89 at 15–17.

We see no reason to alter the determination made by the court with regard to any of its rulings against the interest of the appellants. Accordingly, we will affirm its actions.

Orders affirmed.

MONTGOMERY, J., concurs in the result.