J-S18025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
SHAKOOR R. TRAPP :
:
Appellant : No. 1785 MDA 2019

Appeal from the PCRA Order Entered October 2, 2019
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000866-2011

BEFORE: KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED JULY 27, 2020**

Appellant, Shakoor R. Trapp, appeals from the order entered in the Lycoming County Court of Common Pleas, which dismissed his first petition brought under the Post-Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this case are as follows. During the early morning hours of May 29, 2011, Appellant broke into Victim's home, entered her bedroom while she was asleep, and choked, stabbed, and shot Victim. During the investigation into the incident, police executed a search warrant of Appellant's residence. There, officers recovered a bloody sock in the living room. In Appellant's bedroom, police found a pair of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

Timberland boots and a broken knife with blood on the blade and handle. Police also collected a blood sample from the front doorway of Victim's home and DNA buccal swab samples from Appellant and Victim. As well, police collected a buccal swab sample from Victim's paramour, Shakeen Taylor, and conducted on him a Scanning Electronic Microscopy ("SEM") kit to test for gunshot residue. Investigating police sent much of the forensic evidence to the Pennsylvania State Police ("PSP") DNA laboratory for testing; police did not submit Mr. Taylor's buccal swab and SEM kit. The PSP lab did not perform DNA testing of human hairs found on the bloody sock and the Timberland boots.

The Commonwealth ultimately charged Appellant with attempted murder, aggravated assault, burglary, and related offenses, as well as several violations of the Uniform Firearms Act. Prior to Appellant's first jury trial, the court severed the persons not to possess firearms charge to be decided at a bench trial. Appellant's first jury trial resulted in a mistrial in June 2012, but the court convicted Appellant of persons not to possess firearms.

Appellant's second jury trial commenced on September 10, 2014. The Commonwealth presented the testimony of, *inter alia*, Timothy Gavel, a forensic scientist in the PSP DNA lab. Mr. Gavel testified that he analyzes items the PSP lab receives for DNA testing and compares the genetic material from those items with samples of individuals' DNA. Mr. Gavel discussed his examination of the blood sample from Victim's doorway, as well as the knife

blade, bloody sock, and boots police recovered from Appellant's home. Mr. Gavel identified Victim's DNA on the bloody sock, the blood stain from Victim's front door threshold, and the knife blade. Those DNA samples have a chance of a coincidental exact match with another individual in the African American community[2] of 1 in 320 quintillion. Mr. Gavel added that Appellant's DNA is a "major component" of genetic material on the sock, and the chance of a coincidental match of Appellant's DNA on the sock with another African American is 1 in 25 septillion. Mr. Gavel explained the bloody sock also contains a mixture of DNA of several individuals. He noted the amount of DNA from an unknown contributor to the sock is very small, such that a DNA comparison is impossible. Mr. Gavel said the back and laces of the Timberland boots also contain a mixture of genetic material, the major component of which is Appellant's DNA. The DNA from the boots also has 1 in 25 septillion odds of matching with another African American. (N.T. Trial, 9/11/14, at 99-120).

On September 12, 2014, the jury convicted Appellant of one count each of attempted murder, aggravated assault, burglary, criminal trespass, possession of an instrument of crime, reckless endangerment of another person, and simple assault. The court sentenced Appellant on April 8, 2015, to an aggregate term of thirty-two and one-half (32½) to sixty-five (65) years'

---

[2] Victim and Appellant are African American.

incarceration. This Court affirmed the judgment of sentence on July 13, 2016. *See Commonwealth v. Trapp*, 154 A.3d 854 (Pa.Super. 2016) (unpublished memorandum). Appellant sought no further direct review.

On November 4, 2016, Appellant timely filed *pro se* his first and current PCRA petition, and the court subsequently appointed counsel. Appellant filed an amended petition on December 6, 2017, and a second amended petition on February 16, 2018, asserting claims of trial counsel ineffectiveness regarding counsel's failure to seek an independent investigation into the Commonwealth's forensic evidence.

In the February 16th filing, Appellant asked the court to compel the Commonwealth to provide its forensic data from trial to a third-party lab, Cybergenetics, for a free preliminary screening and DNA comparison. In particular, Appellant sought the electronic data reflecting the results of the PSP lab's analysis of the DNA on the bloody sock. Appellant also sought to submit to Cybergenetics forensic evidence samples the PSP lab did not receive or test. The PCRA court granted in part and denied in part Appellant's petition on June 19, 2019. Specifically, the court ordered the Commonwealth to provide to Cybergenetics the PSP lab's electronic data from the DNA testing it performed. The court denied, however, Appellant's request for a forensic examination of items the PSP lab did not test, including human hairs on the bloody sock and Timberland boots, and Mr. Taylor's buccal swab and SEM kit.

Regarding the remaining ineffectiveness claims, the PCRA court issued

notice of its intent to dismiss Appellant's PCRA petition without a hearing per Pa.R.Crim.P. 907 on July 24, 2019, and dismissed the petition on October 2, 2019. Appellant filed a timely notice of appeal on October 25, 2019. On November 1, 2019, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on November 20, 2019.

Appellant raises the following issues for our review:

> Whether the [PCRA] court erred by dismissing without a hearing [Appellant]'s claim for post-conviction relief that he was prejudiced by the ineffective assistance of [second trial] counsel who failed to retain the services of an expert to review the findings and conclusions of the [PSP] Bureau of Forensic Services, testify on behalf of the defense and/or conduct independent forensic analysis of the materials submitted to the [PSP] Bureau of Forensic Services?

> Whether the [PCRA] court erred by dismissing without a hearing [Appellant]'s claim for post-conviction relief that he was prejudiced by the ineffective assistance of [second trial] counsel who failed to retain the services of an expert or to otherwise investigate and conduct forensic analysis of potentially exculpatory evidence that the defense knew to be in the possession of the Commonwealth that the Commonwealth chose not to submit to the [PSP] Bureau of Forensic Services for testing?

(Appellant's Brief at 8).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. H. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA

court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. J. Ford*, 44 A.3d 1190 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *Commonwealth v. Wah*, 42 A.3d 335 (Pa.Super. 2012).

In his issues combined, Appellant argues trial counsel rendered ineffective assistance when prior to the second trial, counsel failed to seek funds for: (1) additional testing of the Commonwealth's DNA comparison data of the genetic material on the sock; and (2) a forensics expert witness to conduct/review the additional analysis and rebut Mr. Gavel's testimony. Appellant submits counsel also should have submitted samples from the bloody sock to Cybergenetics, whose free preliminary test was available prior to the second trial. Appellant avers the free preliminary analysis Cybergenetics performed during PCRA proceedings revealed that the source of an unknown individual's DNA on the bloody sock is identifiable, contrary to Mr. Gavel's testimony. Appellant posits that had trial counsel sought additional comparative testing of the DNA on the sock, and had an expert witness testify to those results, the defense could have uncovered and

introduced at trial exculpatory evidence.

Appellant also claims trial counsel was ineffective for failing to submit to Cybergenetics potential pieces of forensic evidence the PSP lab did not analyze. Appellant maintains counsel also could have, but did not, seek funds for an independent forensic expert to test the samples the PSP did not review and testify to the results at trial. Appellant asserts that DNA examination and comparison of hairs recovered from the bloody sock and Timberland boots and Mr. Taylor's buccal swab and SEM kit would have yielded exculpatory evidence if counsel had procured additional testing. Appellant concludes his ineffectiveness claims warranted an evidentiary hearing. We disagree.

The law presumes counsel has rendered effective assistance. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). To prevail on a claim of ineffective assistance of counsel, a petitioner bears the burden to prove his claims by a preponderance of the evidence. *Commonwealth v. Turetsky*, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for the asserted action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.*

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis

for the assertion of ineffectiveness is of arguable merit…." ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met, we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95.

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326 (1999), we held that a criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

***Commonwealth v. Chambers***, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (quotation marks and some internal citations omitted). Significantly, "[w]here it is clear that a petitioner has failed to meet any of the three, distinct prongs of the [ineffectiveness] test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." ***Commonwealth v. Steele***, 599 Pa. 341, 360, 961 A.2d 786, 797 (2008).

Additionally:

[T]o prevail on a claim of ineffectiveness for failing to call a witness, a [petitioner] must prove, in addition to meeting the three *Pierce* requirements, that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the [witness'] testimony was so prejudicial as to have denied him a fair trial.

*Commonwealth v. Wright*, 599 Pa. 270, 331, 961 A.2d 119, 155 (2008). A petitioner's failure to identify or present potential witnesses is grounds for denial of relief. *Commonwealth v. Treiber*, 632 Pa. 449, 498, 121 A.3d 435, 464 (2015).

To demonstrate…prejudice, a petitioner must show how the uncalled [witness'] testimony would have been beneficial under the circumstances of the case. Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the [witness'] testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy.

*Commonwealth v. Sneed*, 616 Pa. 1, 23, 45 A.3d 1069, 1109 (2012) (internal citations and quotation marks omitted). Generally, "trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony which was presented by the prosecution." *Commonwealth v. Marinelli*, 570 Pa. 622, 644, 810 A.2d 1257, 1269 (2002).

Further:

[A]s an appellate court, our review is limited by the contents of the certified record. Pa.R.A.P. 1921; *Commonwealth v. Young*, 456 Pa. 102, [115,] 317 A.2d 258, 264 (1974)

- 9 -

("only the facts that appear in [the] record may be considered by a court"). ***See also Ritter v. Ritter***, [518 A.2d 319, 323 (Pa.Super. 1986)] ("the appellate court can only look at the certified record on appeal when reviewing a case"). … Additionally, [an a]ppellant has the duty to ensure that all documents essential to his case are included in the certified record. ***Fiore v. Oakwood Plaza Shopping Ctr.***, [585 A.2d 1012, 1019 (Pa.Super. 1991)] ("It is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal"). If a document is not in the certified record then this Court cannot take it into account.

***Commonwealth v. Walker***, 878 A.2d 887, 888 (Pa.Super. 2005).

Instantly, as an initial matter, the certified record does not contain any documentation of the results of Cybergenetics' free preliminary test Appellant procured during PCRA proceedings. Thus, to the extent Appellant's claims are based on a comparison of the results of Cybergenetics' examination with the forensic data the Commonwealth presented at Appellant's second trial, those arguments are waived. ***See id.***

Even if Appellant had properly preserved his claims related to a comparison of Cybergentics' examination, they would still merit no relief. Regarding Appellant's claim that trial counsel was ineffective for failing to procure additional testing of the bloody sock, the PCRA court reasoned:[3]

---

[3] In its opinion, the PCRA court discusses the results of Cybergenetics' preliminary test, indicating the court received and reviewed the results. The Commonwealth has not objected to Appellant's or the PCRA court's discussion of the outcome of Cybergenetics' examination. For the purposes of discussing whether Appellant's claim would have merited relief if properly preserved, we accept the PCRA's court account of Cybergenetics' test results.

- 10 -

…PCRA counsel submitted the PSP's data from its DNA testing to Cybergenetics for a free screening and preliminary report. The preliminary report indicated that [V]ictim's DNA was present in the blood stain on the sock with a DNA match statistic of 19 zeroes after the 1 (*i.e.*, ten quintillion) and [Appellant]'s DNA was present on the cutting from the cuff/leg of the sock with a match statistic of 23 zeroes after the 1 (*i.e.*, 100 sextillion). While the preliminary report also indicated the presence of DNA from an unknown person in the blood stain and on the cuff/leg cutting of the sock, the match statistics were much lower—only 5 zeroes after the one (100,000) for the blood stain and 8 zeroes after the 1 (100 million) for the cuff/leg area.

Timothy Gavel, a forensic scientist at the PSP DNA laboratory, testified at trial that the blood on the sock matched [V]ictim's DNA, the chance of a coincidental match in the African American population is one in 320 quintillion, and a quintillion has 18 zeroes in it. He also testified that DNA from the elastic portion of the cuff and leg of the sock matched [Appellant]'s DNA and the chance of a coincidental match in the African American population would be approximately one in 25 septillion, which has 24 zeroes. Furthermore, the PSP findings and conclusions acknowledged that there was a DNA mixture but that [Appellant] was the "major co[mponent]."

In other words, the preliminary report from Cybergenetics did not refute the PSP's analysis, but rather was consistent with it, as both found [V]ictim's blood and [Appellant]'s DNA on the sock recovered from [Appellant]'s bedroom with similar match statistics.

(Rule 907 Notice Order and Opinion, filed July 24, 2019, at 6) (internal citations to record omitted). We agree with the PCRA court's conclusion.

Based upon the PCRA court's description of the Cybergenetics' test data, the examination did not entirely contradict Mr. Gavel's testimony. Both Mr. Gavel's analysis and Cybergenetics' test acknowledged the existence of DNA of an unknown source on the sock. The Cybergenetics' examination adds only

that the source of that genetic material is identifiable; but it did not identify the additional individual whose DNA is on the sock. Appellant baldly states the identification of the unknown DNA contributor would have been exculpatory at trial. Nevertheless, the presence of another individual's DNA on the sock would not eliminate the presence of Appellant's DNA on the sock to yield exculpatory results. Thus, Appellant fails to establish there is a reasonable probability that results from an independent forensic analysis of the bloody sock would have changed the outcome of trial. *See Chambers, supra*; *Pierce, supra*.

Likewise, Appellant baldly asserts that forensic testing of the human hairs on the bloody sock and Timberland boots, as well as Mr. Taylor's buccal swab and SEM kit, would have produced exculpatory evidence. Again, Appellant does not establish how an analysis of these items would have yielded exculpatory evidence and produced a reasonable probability of a different outcome at trial. *See Chambers, supra*; *Pierce, supra*.

Further, Appellant's assertion that counsel's failure to present expert forensic witness testimony to oppose the Commonwealth's expert testimony amounts to ineffectiveness fails. *See Marinelli, supra*. Appellant also fails to show: (1) such a forensic expert witness existed; (2) was available to testify; (3) trial counsel knew or should have known about the witness; and (4) the forensic expert was willing to testify for Appellant. *See Treiber, supra*; *Wright, supra*.

In any event, Appellant does not show how the proposed expert testimony to rebut Mr. Gavel's trial testimony would have altered the trial results. *See Chambers, supra*. As this Court described on direct appeal, the Commonwealth presented overwhelming evidence to support Appellant's convictions, beyond the DNA evidence. *See Trapp, supra* (explaining that Victim positively and reliably identified Appellant as assailant during police investigation and at trial; Appellant broke into Victim's home as she slept, and stabbed and shot her; neighbor's testimony placed Appellant near Victim's home around time of attack, and established Appellant had access to handgun similar to weapon Victim described her assailant using; and Appellant was hiding when police apprehended him, demonstrating his consciousness of guilt). Based upon the foregoing, Appellant's ineffectiveness claims fail, and the PCRA court did not abuse its discretion when it declined to hold an evidentiary hearing. *See Steele, supra*; *Turetsky, supra*; *Wah, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2020

- 13 -